IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 1:19-CV-02565-LMM |
| PETER BAKER, et al., | : : : : | |
| Defendants. | : : | |

## ORDER

This case comes before the Court on Securities and Exchange Commission's Motion for Default Judgment as to Defendant Prestige Global Trading, Ltd. and for Remedies and Final Judgment as to all Defendants [37]. After due consideration, the Court enters the following Order.

## I.   BACKGROUND

The Securities and Exchange Commission (SEC) filed this lawsuit against Peter Baker, Prestige Global Trading, Ltd. ("Prestige"), Elizabeth Oharriz, Diversified Initiatives Consulting & Logistics, Inc. ("Diversified), and Sienna Business Group, Inc. ("Sienna") for their roles in a "prime bank" fraud scheme.[1]

---

[1] The SEC described this type of scheme in the following way:

Dkt. No. [1]. The Court has extensively detailed the factual background in its previous summary judgment order against Defendant Baker. Dkt. No. [32]. For the purposes of this order, the Court presents the following abridged background.

Defendant Baker was the President and CEO of Defendant Prestige and the Vice President of Defendant Sienna. Dkt. No. [24-4] at 33. Defendant Oharriz was the President of Defendants Diversified and Sienna. Dkt. No. [1] ¶ 19. Neither Defendant Baker nor Prestige have ever been registered with the SEC. Id. at 33–34; Dkt. No. [24-8] ¶ 4. Defendant Baker and Defendant Oharriz each made material misrepresentations to potential investors and together carried out these prime bank fraud schemes against five groups of investors—Hawk's Rest, LLC ("Hawk's Rest"), Capital Consulting, LLC ("Capital Consulting"), Gestion Austral Los Pinos SA ("GALP"), ADVJ04, and Transatlantic Bdr. Ltd., LLC ("Transatlantic").

Defendants Elizabeth Oharriz, Diversified, and Sienna (collectively, the Settling Defendants) each entered into a settlement agreement with the SEC. See Dkt. No. [8-1]. As part of their settlements, they agreed to accept the Court's

---

The term 'prime bank' fraud commonly refers to schemes in which fraudsters purport to sell investors financial instruments from a well-known bank that investors can then trade to generate enormous returns. The purported instruments often have official-sounding names, including 'bank guarantees,' 'bank debentures,' and 'stand-by letters of credit.' In theory, investors would pay an advance fee and, in return, obtain control of one of these instruments. In reality, after investors pay their advance fee, the fraudsters either disappear or string their victims along to extract more money and delay complaints to law enforcement. Dkt. No. [1] ¶ 20.

order of disgorgement of ill-gotten gains and prejudgment interest, with an amount of disgorgement and prejudgment interest to be determined by the Court. Id. ¶ 3. They also agreed that the Court could determine whether a civil penalty should be imposed and that the Court could assume, for purposes of deciding what penalties to assign, that all the allegations in the Complaint are true. Id. Finally, they agreed to accept permanent injunctions against their future violations of certain securities laws and participation in any issuance, offer, or sale of any security except the purchase or sale of securities listed on a national securities exchange. Id. ¶ 2. Because of this settlement, the Court entered judgment against the Settling Defendants as well as permanent injunctions against some securities-related transactions and violations of securities laws, which were fully detailed in the consent order. Id. at 2–5.

This Court granted summary judgment [35] as to liability against Defendant Baker for three violations of federal securities laws: (1) Securities Exchange Act Section 10(b) and Rule 10b-5 thereunder; (2) Securities Act Section 17(a); and (3) Securities Exchange Act Section 15(a). The Court found that Defendant Baker made material representations to investors in three distinct transactions—the Hawk's Rest, Capital Consulting, and Gestion Austral Los Pinos SA ("GALP") transactions. Dkt. No. [32] at 14. Namely, the Court found that Defendant Baker misrepresented to investors that (1) he had capacity to obtain, control, and deliver the prime bank instruments; (2) he could refund investors' fees if the transactions failed; and (3) he acted with scienter. Id. 14–17.

Defendant Prestige did not file an answer to the Complaint, and they are in default. As such, all factual allegations in the complaint against Prestige are taken as true. The SEC has now moved for default judgment. In determining whether default judgment should be entered, the Court must determine if the SEC has filed a well-pleaded complaint and if a hearing on default judgment damages is necessary as to this Defendant before then turning to the appropriate remedies.

As to all Defendants, the Court must also determine what remedies are appropriate given that liability has been established. The SEC also asks the Court to enter final judgment against all Defendants.

## II.   DISCUSSION

### A. Default Judgment Proceedings against Prestige

Federal Rule of Civil Procedure 55 sets forth a two-step process for securing a default judgment. First, a party seeking default must obtain a Clerk's entry of default pursuant to Rule 55(a) by providing evidence "by affidavit or otherwise" that the opposing party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55; see also Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1360 n.1 (N.D. Ga. 2011) ("First the clerk must enter a party's default . . . [T]he party [seeking default judgment] must then apply to the court for a default judgment."). Second, after the Clerk has made an entry of default, the party seeking default judgment must file a motion for default judgment under Rule 55(b)(1) or (2). A Clerk's entry of default under Rule 55(a) is thus a prerequisite

for default judgment to be granted under Rule 55(b). <u>Sun v. United States</u>, 342 F. Supp. 2d 1120, 1124 n.2 (N.D. Ga. 2004).

A default entered pursuant to Rule 55(a) constitutes an admission of all well-pleaded factual allegations contained in a complaint. <u>Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975). However, entry of default does not automatically warrant the Court's entry of default judgment. <u>Frazier</u>, 767 F. Supp. 2d at 1362 (quoting <u>Nishimatsu Constr.</u>, 515 F.2d at 1206)).

Even if a defendant is in default, it "is not held to admit facts that are not well-pleaded or to admit conclusions of law." <u>Id.</u>; <u>see also</u> <u>United States v. Khan</u>, 164 F. App'x 855, 858 (11th Cir. 2006) ("[A] default judgment may not stand on a complaint that fails to state a claim."). "There must be a sufficient basis in the pleadings for the judgment entered," and "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." <u>Nishimatsu Constr.</u>, 515 F.2d at 1206. This means that the Court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." <u>Frazier</u>, 767 F. Supp. 2d at 1362 (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure § 2688 (3d ed.)). A plaintiff's burden at the default judgment stage is "akin to that necessary to survive a motion to dismiss for failure to state a claim." <u>Surtain v. Hamlin Terrace Found.</u>, 789 F.3d 1239, 1245 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." <u>Id.</u>

Since entry of default constitutes an admission of the facts in a complaint, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Moreover, a defaulted defendant does not admit to allegations relating to the amount of damages. Frazier, 767 F. Supp. 2d at 1365. Therefore, before entering a final order regarding a default judgment, a court may conduct a hearing to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). However, "[a]n evidentiary hearing is not a *per se* requirement" for an entry of default judgment pursuant to Rule 55(b)(2) because said Rule "speaks of evidentiary hearings in a permissive tone." SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); Fed. R. Civ. P. 55(b)(2) (explaining that "[t]he court *may* conduct hearings or make referrals" to determine damages (emphasis added)). "District courts in the Eleventh Circuit have noted that an evidentiary hearing is not necessary where the moving party has provided supporting affidavits as to the issue of damages." Frazier, 767 F. Supp. 2d at 1365.

Upon review of the SEC's Complaint, Motion, and attached exhibits, the Court finds that the Complaint is well-pleaded and states a *prima facie* case for violations of the Exchange Act Section 10(b) and Rule 10b-5 as well as Securities Act Section 17(a) sufficient to support an award of disgorgement damages and an injunction against Prestige. Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007) ("Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint,

6

which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive sufficient basis in the pleadings for the particular relief sought.").

The SEC can show a § 10(b) violation if it shows "(1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter." <u>SEC v. Merch. Cap., LLC,</u> 483 F.3d 747, 766 (11th Cir. 2007). Similarly, in order to prove a § 17(a) violation, the SEC must show "(1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter." <u>Id.</u> A misrepresentation or omission is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 231–32 (1988) (quoting <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976)).

The SEC has sufficiently pleaded and proved that Prestige met all the preceding elements. As discussed in this Court's summary judgment order against Defendant Baker, the financial instruments underlying the "prime bank" fraud schemes were in fact securities. <u>See</u> Dkt. No. [32] at 15. The Court also finds that the SEC sufficiently demonstrated that Prestige made material representations. Specifically, the SEC's Complaint alleged that Defendants fabricated "standby letter of credit" and "bank guarantee" documents and misrepresented that investors could sell or lease them for profit and that their

fees would be fully refundable until investors received consideration. Dkt. No. [1] ¶¶ 2–6. However, the SEC alleges, and this Court has found, that these claims were misrepresentations, with investors losing all or most money invested and never receiving the promised instruments Id. ¶¶ 8, 24. The SEC also sufficiently pleaded the scienter requirement, alleging that Defendants acted intentionally to conceal their scheme by preventing investors from contacting the banks supposedly involved, stalling complaints, and producing additional fraudulent documents. Id. ¶¶ 8, 25, 79–81. That shows a level of intentionality and awareness that implicates Prestige.

The next issue is damages. The Court exercises its discretion to grant the SEC's request for damages without a hearing against Prestige. See Frazier, 767 F. Supp. 2d at 1365. The SEC seeks disgorgement and prejudgment interest in its Complaint and provides a sworn declaration by forensic accountant Richard Gregory Lill as to the exact amount. See Dkt. Nos. [1, 37-1]. The disgorgement damages in this case are a "sum certain" because the financial accounts reflect an exact amount that was transferred to each of the Defendants, including Prestige, as detailed in the Lill Declaration.[2] Cf. Smyth, 420 F.3d at 1231 (finding an evidentiary hearing was necessary where "the disgorgement and prejudgment interests sums are contested" and the SEC's calculation was "only 'a reasonable

---

[2] Alternatively, even if the disgorgement amount is not a sum certain, it is a sum capable of computation through adding together the different amounts transferred to Prestige's bank accounts and subtracting the small amount that was refunded to a single investor.

approximation'"). Because there was no return on investment or any valuable financial instrument ever transferred to investors, all of the "fees" that investors paid to Defendants and ultimately received by Prestige are ill-gotten gains to be disgorged. Accordingly, this is "a case where all essential evidence was already of record" and the Court is not required to hold a hearing to determine damages. Id. at 1233.

## B. Remedies and Final Judgment as to all Defendants

The Settling Defendants are already subject to injunctions and have agreed that the Court shall assign disgorgement damages with prejudgment interest. Defendant Oharriz has also agreed that the Court can determine whether to impose civil monetary penalties. Defendant Baker opposes the imposition of a civil penalty, particularly a third-tier penalty, but has not challenged the propriety of disgorgement with prejudgment interest or injunctive relief banning him from the securities industry. As to Defendant Prestige, because it is in default, all allegations in the Complaint are admitted as to this Defendant.

The Court now must decide the exact remedies to impose against all Defendants as well as whether to impose civil monetary penalties against the individual Defendants, Baker and Oharriz.

## 1. Injunctive Relief

The SEC first asks this Court to enjoin all Defendants from engaging in future securities laws violations.

The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated. Indicia that a wrong will be repeated include the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations. While scienter is an important factor in this analysis, it is not a prerequisite to injunctive relief.

SEC v. Calvo, 378 F.3d 1211, 1216 (11th Cir. 2004) (internal citations and quotations omitted).

The Court finds that the SEC's requested injunctions would be appropriate against all Defendants. The Settling Defendants have already agreed to such an injunction, and the other remaining Defendants have not challenged the propriety of issuing an injunction against them. In addition, the facts establish the factors supporting such an injunction.

Defendant Baker has stated that he "accepts…a permanent banning from the industry." Dkt. No. [39] at 2. The Court determined in its summary judgment order against Defendant Baker that he had committed past securities law violations and found facts sufficient to indicate that the violations would be repeated. Under the factors listed in Calvo, the Court finds that Baker's violations were recurrent between the Hawk's Rest, GALP, and Capital Consulting transactions—all of which Baker played a major role in. The conduct was egregious given the sum of total money collected despite the lack of any returns given to investors. Additionally, the Court finds that Baker acted knowingly

throughout the scheme given that he personally had lost $300,000 in schemes like the ones he later perpetrated and after that never invested in "bank guarantees" with his own money. Dkt. No. [32] at 3.

As to Defendant Prestige, as previously discussed in the default judgment portion of this order, it perpetrated securities law violations through the actions of Baker sufficient to demonstrate a likelihood of repeated violations to support the injunctions. The facts admitted in the Complaint establish the facts necessary to support an injunction. The Court therefore enjoins Defendants Baker and Prestige as reflected in the conclusion of this Order.

## 2. <u>Disgorgement</u>

The Court has authority to "require disgorgement. . .of any unjust enrichment by the person who received such unjust enrichment as a result of such violation." 15 U.S.C. § 78u(d)(3). "The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." <u>SEC v. Calvo</u>, 378 F.3d 1211, 1217 (11th Cir. 2004). Once the SEC produces a reasonable approximation, the burden shifts to the defendant to demonstrate that the SEC's estimate is unreasonable. <u>Id.</u> "Because disgorgement is remedial and not punitive, the court's power to order disgorgement 'extends only to the amount with interest by which the defendant profited from his wrongdoing.'" <u>SEC v. Phoenix Telecomm., L.L.C.</u>, 231 F. Supp. 2d 1223, 1225 (N.D. Ga. 2001) (quoting <u>SEC v. Blatt</u>, 583 F.2d 1325, 1335 (5th Cir. 1978)).

The SEC argues that all the money the Defendants collected from their investors constitutes unjust enrichment because there were no actual financial products underlying their investments, no returns, and nothing of value provided to investors. Dkt No. [37-2] at 25. The SEC further requests that the amount of disgorgement owed by the entity Defendants (Prestige, Sienna, and Diversified) be collected through joint and several liability of the entities and the individual Defendants who controlled them—with Baker controlling Prestige and Oharriz controlling Sienna and Diversified.

In support of its disgorgement claims, the SEC submitted a declaration by Richard Gregory Lill, a forensic accountant. Dkt. No. [43-1] ¶ 1. Lill reviewed financial records in the case, including deposits and transfers between different financial accounts "to trace investor money and determine the amount each defendant ultimately received." Id. ¶ 5. Lill calculated the amount each Defendant ultimately received from Hawk's Rest, GALP, Capital Consulting, Transatlantic, and ADVJ04 investors. Id. ¶ 6.

In their settlements, Defendants Oharriz, Sienna, and Diversified agreed to pay disgorgement of ill-gotten gains from these fraudulent transactions as well as prejudgment interest upon the gains. Dkt. No. [11] at 5. The Settling Defendants have not contested the amount of disgorgement or whether it should be imposed through joint and several liability.

Defendants Baker and Prestige have not quarreled with the SEC's calculations on disgorgement and said they "accept the SEC's position on

restitution." Dkt. No. [39] at 2. The Court finds that the amounts listed in the Lill declaration and requested by the SEC are appropriate with respect to each of the Defendants.

The Court also finds that joint and several liability is appropriate between the entity Defendants and their respective controlling individual Defendants. In addition, none of the Defendants oppose the imposition of joint and several liability as the SEC has requested it.

"It is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct." Calvo, 378 F.3d at 1215. In Calvo, the Eleventh Circuit found that an individual could be jointly and severally liable for disgorgement with an entity where the individual's family founded the entity, the individual held a 50% ownership interest in the entity, and the individual was the entity's sole managing member. Id. at 1216. Additionally, the court found that "both parties engaged in securities laws violations" and that the individual "was a necessary participant and a substantial factor" in the entity's violations. Id.

Those factors counsel for the imposition of joint and several liability for the entity Defendants' disgorgement here. Defendant Baker founded Defendant Prestige and is its only stakeholder. Dkt. No. [39] at 3. Defendant Oharriz was President of Defendants Sienna and Diversified at all relevant times, she controlled them, and she received the benefit of any investor money that was deposited in Sienna or Diversified's accounts. Dkt. Nos. [1] ¶ 19; [37-2] at 27.

13

Accordingly, joint and several liability is appropriate with respect to the disgorgement amounts attributed to Sienna, Diversified, and Prestige.

### 3. **Prejudgment Interest**

The SEC next asks this Court to order Defendants to pay prejudgment interest on the disgorged amount. None of the Defendants have opposed the imposition of prejudgment interest.

The decision to award prejudgment interest is within this Court's discretion. See SEC v. Merch. Capital, LLC, 486 F. App'x 93, 97 (11th Cir. 2012) (affirming a district court's imposition of prejudgment interest). "Without prejudgment interest, the [Defendants] would have benefitted from what in effect amounted to interest-free loans of the ill-gotten funds." Id. The SEC has requested prejudgment interest dating back only from the start of the most recent violation in the series of five violations, the ADVJ04 transaction. Dkt. No. [37-2] at 27–28. None of the Defendants have objected to the awarding of prejudgment interest. Accordingly, the Court grants the SEC's request for prejudgment interest—calculated using the Internal Revenue Service underpayment rate and as quantified in the Lill declaration—against all Defendants. See SEC v. Lauer, 478 F. App'x 550, 557–58 (11th Cir. 2012) (noting that the district court has "wide discretion" to impose prejudgment interest and upholding use of the IRS underpayment rate to calculate it).

## 4. **Civil Monetary Penalties**

The SEC also asks this Court to award "third-tier" civil monetary penalties against Defendants Baker and Oharriz in the amount of $585,141 and $390,094, respectively. Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act—with nearly identical language—allow the SEC to seek civil penalties imposed by the Court. The Exchange Act provides,

> Whenever it shall appear to the Commission that any person has violated any provision of this chapter, [or] the rules or regulations thereunder, . . . the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to (i) impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation. . . .

15 U.S.C. § 78u(d)(3)(A).[3] To determine the amount of the penalty, the Act outlines three tiers based on the nature of the violation. Under the first tier, "[f]or *each violation*, the amount of the penalty shall not exceed the greater of (I) $9,753 for a natural person or $97,523 for any other person." 15 U.S.C. § 78u(d)(3)(B)(i) (emphasis added).[4] The second tier goes further: "Notwithstanding clause (i), the amount of a civil penalty . . . for *each such violation* shall not exceed the greater of (I) $97,523 for a natural person or $487,616 for any other person . . . if the violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a

---

[3] Due to the nearly identical language of the relevant statutes, only the Exchange Act will be quoted to avoid redundancy.

[4] Each of the penalty caps have been updated for inflation per 17 C.F.R. § 201.1001.

regulatory requirement." 15 U.S.C. § 78u(d)(3)(B)(ii) (emphasis added). For the third tier, the Act states:

> Notwithstanding clauses (i) and (ii), the amount of a civil penalty imposed . . . for *each violation* . . . shall not exceed the greater of (I) $195,047 for a natural person or $975,230 for any other person . . . if—
>
>> (aa) the violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
>>
>> (bb) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

§ 78u(d)(3)(B)(iii) (emphasis added).

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." SEC v. Monterosso, 756 F.3d 1326, 1338 (11th Cir. 2010). The "Commission need only make 'a proper showing' that a violation has occurred and a penalty is warranted." SEC v. Warren, 534 F.3d 1368, 1370 (11th Cir. 2008). Although the statute leaves the amount to be imposed to the discretion of the district judge, "courts consider numerous factors, including the egregiousness of the violation, the isolated or repeated nature of the violations, the degree of scienter involved, whether the defendant concealed his trading, and the deterrent effect given the defendant's financial worth." Miller, 744 F. Supp. 2d at 1344 (citing SEC v. Sargent, 329 F.3d 34, 42 (1st Cir. 2003)). The Act also authorizes penalties for "each violation," so

"courts are empowered to multiply the statutory penalty amount by the number of statutes the defendant violated, and many do." Miller, 744 F. Supp. 2d at 1345.

The SEC requests that Baker and Oharriz receive third-tier civil monetary penalties because they engaged in a multi-year scheme that resulted in over a million dollars lost over five distinct transactions. Dkt. No. [37-2] at 29.

Defendant Baker argues that civil penalties should not be imposed against him. Defendant Baker argues that the SEC's calculations attribute a greater portion of total losses to Defendants Oharriz, Diversified, and Sienna than it does to Defendants Baker and Prestige. Dkt. No. [39] at 13. Accordingly, Defendant Baker argues that his penalty is disproportionately high compared to his actual gains and the smaller penalty the SEC seeks against Defendant Oharriz, citing the SEC's calculations that he received $194,262 and Prestige obtained $308,672. Id. Next, he argues that his payment of restitution and a ban from future securities work are sufficient to penalize his involvement. He also argues that his economic status should prevent the imposition of third-tier civil penalties because he is unemployed, seventy-seven-years old, living on his Army pension in a house owned by his wife. Dkt. No. [39] at 15.

First, the Court finds that Defendants' conduct was egregious in this case. Defendants Baker and Oharriz each made knowing misstatements of fact and omissions and caused substantial financial harm to investors. Second, the conduct was not isolated. Defendant Baker was primarily responsible for misrepresentations directed at three different investors groups over the course of

several years. Third, the Court finds that Defendants acted with a high degree of scienter. Before Defendant Baker became involved in the scheme underlying this lawsuit, he fell victim to prime bank fraud and lost $300,000 in personal "investments" from 2008–2010 for a "bank guarantee" and "standby letter of credit" that never produced any returns. See Dkt. No. [24-5]; Dkt. No. [39] at 3–4. This suggests, despite his claims to naivete, that he was aware of the harm that could result from this kind of investment scheme. Additionally, Defendant Baker delivered investors falsified documents purporting to be real financial instruments that had no backing and that were riddled with blatant typographical errors. As just one example of Defendant Baker's knowing misstatements to the Hawk's Rest investors, Defendant Baker and Prestige "represented that they already had control of the bank guarantee" even though the bank at issue had never issued such an instrument. Dkt. No. [24-6] ¶ 12. Further, the money that investors transferred to Defendant Baker that was purportedly to be used as a "fee" for the prime bank instruments was spent on personal expenses and cash withdrawals. No. [24-2] at 16.

Finally, the Court finds that the deterrent effect of the sanctions is appropriate despite Defendant Baker's diminished financial worth. Defendant Baker argues that he has a negative net worth, as a seventy-seven-year-old Army pensioner, living in a house owned by his wife. See Dkt. No. [39] at 15-16. But as the purpose of civil monetary penalties is both punishment and deterrence, the Court finds that poverty alone cannot defeat the need for penalties in this case.

See <u>SEC v. StratoComm Corp.</u>, 89 F. Supp. 3d 357, 373 (N.D.N.Y. 2015) ("While the court may take the defendant's current financial difficulties into account, these circumstances alone cannot negate the need for a severe civil penalty."). And a party's financial position is fluid. Should Defendants' financial circumstances improve, the SEC may be able to collect on these penalties in the future. <u>SEC v. Kane</u>, 97 CIV. 2931 (CBM), 2003 WL 1741293, at *4 (S.D.N.Y. Apr. 1, 2003) ("[T]he court agrees with the Commission that it should not ignore the possibility that a defendant's fortunes will improve, and that one day the SEC will be able to collect on even a severe judgment."). Thus, the Court will award third-tier civil monetary penalties against Defendant Baker.

The Court also finds that Defendant Oharriz's conduct merits the imposition of third-tier civil monetary penalties. Per the Complaint, which Defendant Oharriz stipulated should be used for purposes of determining remedies, her conduct was egregious, repeated, and made with knowledge of the harm she was inflicting. The Court finds that third-tier civil penalties are necessary to effectively punish and deter Defendant Oharriz.

The Court accepts the SEC's request for calculation of the monetary penalty by multiplying the statutory maximum penalty per violation, using each of the transactions in which the individual Defendant took a leading role as the number of "violations." Oharriz took a leading role in the Transatlantic and ADVJ04 transactions, while Baker took a leading role in the Hawk's Rest, GALP, and Capital Consulting transactions. The SEC requests that the Court use $195,047 as

the appropriate statutory maximum penalty.[5] Dkt. No. [37-2] at 31 (citing 17 C.F.R. § 201.1001). Under this method, the Court finds that Oharriz is **ORDERED** to pay a civil monetary penalty of $390,094 ($195,047 x 2) and Baker is **ORDERED** to pay a civil monetary penalty of $585,151 ($195,047 x 3).

## III.   CONCLUSION

In accordance with the foregoing, Plaintiff's Motion for Default Judgment as to Defendant Prestige Global Trading, Ltd. and for Remedies and Final Judgment as to all Defendants [37] is **GRANTED** as follows:

I.

It is hereby **ORDERED** that Defendants Baker and Prestige are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10(b)-5 promulgated thereunder, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)   to employ any device, scheme, or artifice to defraud;

(b)   to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

---

[5] Defendant Baker has not contested that $195,047 represents the appropriate statutory maximum penalty for a third-tier violation by a natural person.

(c)      to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

> (1) any investment strategy or investment in securities;
>
> (2) the prospects for success of any product or company;
>
> (3) the use of investor funds; or
>
> (4) the safety or refundability of investor funds;
>
> (5) compensation to any person;
>
> (6) Defendant's qualifications to advise investors; or
>
> (7) the misappropriation of investor funds or investment proceeds.

It is further **ORDERED** that that as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

II.

It is **ORDERED** that Baker and Prestige are permanently restrained and enjoined from violating Section 17(a) of the Securities Act in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

(1) any investment in or offering of securities,

(2) the prospects for success of any product or company,

(3) the use of investor funds;

(4) the safety or refundability of investor funds;

(5) compensation to any person;

(6) Defendants' qualifications to advise investors; or

(7) the misappropriation of investor funds or investment proceeds.

It is further **ORDERED** as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise:  (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

### III.

It is **ORDERED** that Baker and Prestige are permanently restrained and enjoined from violating Section 15(a) of the Exchange Act directly or indirectly, by making use of any means or instrumentality of interstate commerce or of the mails and engaging in the business of effecting transactions in securities for the accounts of others, or inducing or effecting the purchase and sale of securities, while not registered with the Commission in accordance with the provisions of Section 15(b) of the Exchange Act or while not associated with a broker-dealer that was so registered.

It is further **ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Baker's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Baker or with anyone described in (a).

### IV.

It is further **ORDERED** that Baker and Prestige are permanently restrained and enjoined from directly or indirectly participating in the issuance, offer, or sale of any security, including but not limited to bank guarantees, irrevocable bank undertaking letters, joint venture agreements, proofs of funds, medium term notes, standby letters of credit, and similar instruments, with the exception of the purchase or sale of securities listed on a national securities exchange.

V.

It is hereby **ORDERED** that Defendants shall pay disgorgement of ill-gotten gains and prejudgment interest thereon, as well as civil penalties in the following amounts:

| Defendant | Disgorgement | Pre-judgment interest | Civil Penalty | Total |
|---|---|---|---|---|
| Baker | $194,262 | $30,308.32 | $585,141 | **$809,711.32** |
| Prestige and Baker, jointly and severally | $308,672 | $48,158.31 | | **$356,830.31** |
| Oharriz | $342,504 | $53,436.68 | $390,094 | **$786,034.68** |
| Diversified and Oharriz, jointly and severally | $323,621 | $50,490.60 | | **$374,111.60** |
| Sienna and Oharriz, jointly and severally | $132,339 | $20,647.24 | | **$152,986.24** |

Defendants shall satisfy these obligations by paying their respective amounts to the Securities and Exchange Commission within 30 days after entry of this Final Judgment. Defendants may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendants may also pay be certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identify the case title, civil action number, and name of this Court; the relevant Defendant's name as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by using all collection procedures authorized by law, including, but not limited to, moving for civil contempt at any

25

time after 30 days following entry of this Final Judgment. Defendant shall pay post judgment interest on any amounts due after 30 days of entry of this Final Judgment pursuant to 28 U.S.C. § 1961.

The Commission may enforce the Court's judgment for penalties by the use of all collection procedures authorized by law, including the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, and moving for civil contempt for the violation of any Court orders issued in this action. Defendant shall pay post judgment interest on any amounts due after 30 days of the entry of this Final Judgment pursuant to 28 U.S.C. § 1961. The Commission shall hold the funds, together with any interest and income earned thereon (collectively, the "Fund"), pending further order of the Court.

The Commission may propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. The Court shall retain jurisdiction over the administration of any distribution of the Fund and the Fund may only be disbursed purusuant to na Order of the Court.

Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, neither Baker nor Oharriz shall, after offset or reduction of any award of compensatory damages in any Related

Investor Action based on Baker or Oharriz' payment of disgorgement in this action, argue that he or she is entitled to, nor shall he or she further benefit by, offset or reduction of such compensatory damages award by the amount of any part of his or her payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, the Defendant shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Untied States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Baker or Oharriz by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

VI.

It is further **ORDERED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Judgment. The Clerk is **ORDERED** to enter final judgment in favor of Plaintiff and against Defendants. The Clerk is also instructed to **CLOSE** this case.

IT IS SO **ORDERED** this 8th day of November, 2021.

**Leigh Martin May**
**United States District Judge**